UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NADIA C. RODRIGUEZ,

       Petitioner,

v.                                              Case No:  2:14-cv-301-FtM-29MRM
                                                Case No. 2:11-cr-68-FTM-29DNF

UNITED STATES OF AMERICA,

       Respondent.

_____

## OPINION AND ORDER

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #247)[1] and Memorandum of Points and Authorities in Support (Cv. Doc. #2), both filed on June 2, 2014.  The government filed a Response in Opposition to Motion (Cv. Doc. #7) on August 1, 2014. The petitioner filed a Traverse in Response to United States Opposition (Cv. Doc. #8) on September 22, 2014.  For the reasons set forth below, the Motion is due to be denied.

_____

[1]The Court will make references to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

**I.**

On July 20, 2011, a federal grand jury in Fort Myers, Florida returned a fifteen-count Indictment (Cr. Doc. #1) in which defendant Nadia C. Rodriguez (Rodriguez or petitioner) was charged with conspiracy to possess with intent to distribute and to distribute a quantity of Oxycodone (Count One), and possession with intent to distribute Oxycodone (Count Two). Petitioner was not named in the remaining counts. On January 9, 2012, petitioner appeared before a magistrate judge and entered a plea of guilty to both counts pursuant to a Plea Agreement. (Cr. Docs. #145, 153.) The guilty pleas were accepted, and petitioner was adjudicated guilty on January 10, 2012. (Cr. Doc. #156.)

On April 23, 2012, the Court sentenced petitioner to 108 months imprisonment on each count, to be served concurrently, followed by 36 months of supervised release. (Cr. Doc. #202.) Judgment (Cr. Doc. #203) was filed on April 24, 2012, and petitioner filed a Notice of Appeal (Cr. Doc. #207) on April 27, 2012.

On appeal, petitioner argued that she had received ineffective assistance of counsel during plea negotiations because her trial counsel incorrectly told her that she was subject to a statutory mandatory minimum sentence. The Eleventh Circuit declined to address the issue on direct appeal, and affirmed the

conviction and sentence.  United States v. Rodriguez, 514 F. App'x 945 (11th Cir. 2013).  Petitioner sought rehearing and rehearing en banc, which were denied on May 29, 2013.  (Cv. Doc. #1, p. 15.) The government agrees that petitioner's § 2255 motion was timely filed.  (Cv. Doc. #7, p. 5.)

## II.

Petitioner asserts four grounds for relief:  (1) Ground One: Petitioner's guilty pleas were not knowing and voluntary because her counsel incorrectly told her she was facing a minimum mandatory sentence of 60 months when in fact there was no mandatory minimum sentence, and she was coerced into believing her guilty plea would get her 60 months imprisonment, not the 108 months she received; (2) Ground Two:  Petitioner's attorney provided ineffective assistance by allowing an appeal waiver provision to be in the Plea Agreement without explaining it to petitioner, and the provision is invalid because of the misinformation provided by petitioner's attorney as to the mandatory minimum sentence; (3) Ground Three:  Petitioner's attorney provided ineffective assistance by (a) not disputing the drug quantity attributable to petitioner and failing to make a reasonable and logical argument to mitigate petitioner's drug quantity since she was incarcerated for 13 months of the 16 month conspiracy, and (b) failing to dispute the quantity of drugs as to Count II, resulting in a 108

month sentence without a sufficient supporting drug quantity; and (4) Ground Four: Petitioner's attorney provided ineffective assistance by failing to seek a role reduction as a minor participant in the offenses.[1]

## A. Evidentiary Hearing Standard

A district court shall hold an evidentiary hearing on a habeas corpus petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (citation omitted). However, a district court is not required to hold an evidentiary hearing where the petitioner's allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record. Id. at 715. See also Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (a hearing is not necessarily required whenever ineffective assistance of counsel is asserted). To establish

---

1 The government asserts that Grounds Three and Four are procedurally defaulted because petitioner did not raise these issues on direct appeal. (Cv. Doc. #7, pp. 5-7.) The Court disagrees. Massaro v. United States, 538 U.S. 500, 509 (2003) (the failure to raise ineffective assistance of counsel on direct appeal does not bar the claim in a later collateral proceeding).

entitlement to an evidentiary hearing, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015). Viewing the facts alleged in the light most favorable to petitioner, the Court finds that the record establishes that petitioner is not entitled to relief, and therefore an evidentiary hearing is not required.

## B. Ineffective Assistance of Counsel Standard

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. Hinton v. Alabama, ___ U.S. ___, 134 S. Ct. 1081, 1087-88 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them." Kokal v.

Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances. Hinton, 134 S. Ct. at 1088 (citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. See also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (the Court looks to facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

### C. Knowing and Voluntary Guilty Plea Standard

"A guilty plea is more than a confession which admits that the accused did various acts." United States v. Broce, 488 U.S. 563, 570 (1989) (citations omitted). "By entering a plea of guilty, the accused is not simply stating that [s]he did the discrete acts described in the indictment; [s]he is admitting guilt of a substantive crime." Id. For this reason, the United States Constitution requires that a guilty plea must be voluntary, and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 (1976). A criminal defendant who has pled guilty may attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or the constitutional effectiveness of the assistance she received from her attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of her guilty plea. United States v. Mosley, 173

F.3d 1318, 1322 (11th Cir. 1999). Rule 11 explicitly directs the district judge not to accept a plea without determining these "core concerns."   Therefore, on review, the court is "warranted in regarding the court's acceptance of the plea as a positive finding on each [component of the Rule]."   United States v. Buckles, 843 F.2d 469, 473 (11th Cir. 1988).

### III.

### A. Ground One: Ineffective Assistance In Plea Discussions

Read liberally, petitioner asserts that her guilty pleas were not knowing and voluntary because her counsel (1) incorrectly told her she was facing a minimum mandatory sentence of 60 months, when in fact there was no mandatory minimum sentence[2], and (2) coerced her into believing her plea of guilty would get her 60 months imprisonment, not the 108 months she received.  (Cv. Doc. #1, p. 5.)   For purposes of the §2255 motion, the Court assumes that defense counsel made both statements to petitioner prior to her guilty plea hearing.[3]

---

[2]It is undisputed that there are no statutory mandatory minimum sentences for either of the counts in which petitioner was charged.

[3] Petitioner relies primarily on the concluding statement made by counsel in the Sentencing Memorandum and Request for Reasonable Sentence: "Ms. Rodriguez will . . . ask the Court to consider a departure to the minimum mandatory sentence of 60 months (five years). . . ."  (Cr. Doc. #200, p. 6.)   This Sentencing Memorandum was filed months after petitioner pled guilty.  Additionally, the Sentencing Memorandum also states that "the court is not mandated to impose a minimum sentence, but has the discretion to apply the

Despite the incorrect verbal information from her attorney, the Plea Agreement contained the correct information.  The Plea Agreement stated that Counts One and Two each carry a maximum sentence of 20 years of imprisonment, without parole, a fine, up to three years supervised release, and a $100 special assessment. (Cr. Doc. #145, p. 2, ¶ 2.)  The Plea Agreement does not mention the presence of any mandatory minimum sentence for either count, and indeed there is none.

Petitioner thereafter appeared before a magistrate judge for a change of plea hearing.  The record of that hearing demonstrates that petitioner was given the correct information regarding the maximum sentence and the range of possible sentences, which petitioner said she understood, and petitioner still wanted to plead guilty.

Petitioner stated she was 24 years old, and had completed high school and a year of community college.  (Cr. Doc. #232, 3:6-11.)  Petitioner stated that she could speak, read, and understand English.  (Id., 4:4-6.)  Petitioner affirmed that she had not taken any drugs, alcohol or medication in the previous 48 hours, and that she knew why she was present and what she was doing. (Id., 5:15-20.)  Petitioner stated "Oh, yeah. Yes, I do" in

---

recommendations set forth in the sentencing guidelines or depart from them. . . ." (Cr. Doc. #200, p.4.)

response to the question of whether she understood the charges. (<u>Id.</u>, 5:24-25.)   After petitioner indicated she was satisfied with the services of her counsel, the magistrate judge found that petitioner was competent to enter pleas of guilty to the charges. (<u>Id.</u>, 6:7-17.)   When asked if anyone had done anything to threaten, coerce, or improperly pressure petitioner to plead guilty, petitioner responded "No, sir."  (<u>Id.</u>, 6:18-25.)

Petitioner verified that she initialed each page and signed the end of the Plea Agreement, and that she had read the Plea Agreement and discussed it with counsel before doing so.  (<u>Id.</u>, 7:9-25.)   When petitioner stated "I feel like I understand it [the Plea Agreement] a little bit, yes", the Magistrate Judge asked additional questions "to make sure" she understood.  (<u>Id.</u>, 8:1-6.)

> THE COURT: First of all, do you recognize that the court is not a party to this agreement? By that I mean, there's no judge that's signed this agreement. It's only you and the Government. You understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And you understand the court's not bound by any recommendation as to a sentence or application of the sentencing guidelines that may be contained in the plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you can't withdraw your pleas of guilty if the court chooses not to follow any such recommendations?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: Does this plea agreement contain all the promises you have made to the Government and all the promises the Government has made to you in return for your pleas of guilty?

THE DEFENDANT: Yes, it does.

THE COURT: **Are there any verbal promises or other representations which you feel have been made to you that are not contained in writing in this agreement?**

THE DEFENDANT: **No, sir.**

(Id., 8:7-9:15) (emphasis added).

The magistrate judge discussed sentencing and the maximum statutory penalties with petitioner at the change of plea hearing. (Cr. Doc. #232, 9:25-10:4.)  Petitioner acknowledged that she had discussed the Sentencing Guidelines with her attorney, and then was provided additional information from the magistrate judge:

. . . Have you and Mr. Abruzzo talked about how the sentencing commission guidelines may apply in your case?

THE DEFENDANT: Yes, we have.

THE COURT: Has he explained to you the various considerations which go into determining which guideline range will be consulted by the court?

THE DEFENDANT: Yes, sir.

THE COURT: Are you aware that the sentencing guidelines allow the court to take into account such factors as the actual conduct in

- 11 -

which you engaged, any victim of your offense, the role that you played, whether or not you engaged in any obstruction of justice and whether you've accepted responsibility for your acts as well as other relevant factors?

THE DEFENDANT: Uh-huh.

THE COURT: Do you also understand --

THE DEFENDANT: Yes.

THE COURT: Do you also understand that your criminal history is an important factor in determining the sentencing guidelines?

THE DEFENDANT: Yes, I do

THE COURT: The court will not be able to determine the guideline range for your case until after the presentence report that I spoke about earlier has been completed, and you and the Government have had an opportunity to challenge the facts as reported by the probation officer. It may be necessary for the court to resolve disputed facts or matters contained in the presentence report. That may also affect the applicable guideline range to be consulted in your case.

At this point it's unlikely that your attorney can be specific as to the guideline range which will apply in your case because he doesn't have all the necessary information; he hasn't seen the presentence report.

**Do you understand that you will not be able to withdraw your pleas of guilty on the ground that any prediction your attorney may have made as to the sentencing guideline range or a sentence proves to be inaccurate?**

THE DEFENDANT: **I understand.**

(Id., 10:5-12:6, 14:16-24) (emphasis added).

The magistrate judge then explained the maximum penalties for

both offenses, specifically advising her the sentence could by

"zero to forty years":

> THE COURT: Although the statutes under which
> you're charged set forth the maximum sentence
> which can be imposed, the court will consult
> the sentencing guidelines as well as other
> relevant factors in determining your actual
> sentence.
>
> **At this time your sentence will be somewhere
> between zero and 40 years. You understand
> that?**
>
> THE DEFENDANT: **Yes.**
>
> THE COURT: After it's been determined what
> guideline applies to a case, the Judge has the
> authority in some circumstances to impose a
> sentence that's more severe or less severe
> than the sentence called for by the
> guidelines. . .
>
> . . .
>
> Either counsel, have I neglected to explain
> any possible penalties applicable to this
> defendant?
>
> MR. CASAS: No, Your Honor.
>
> THE COURT: Mr. Abruzzo?
>
> MR. ABRUZZO: No, Your Honor.
>
> THE COURT: Very well. Miss Rodriguez, do you
> understand the possible penalties which apply
> if you enter pleas of guilty to these charges?
>
> THE DEFENDANT: Yes, sir.

(Id., 10:5-12:6, 14:16-24) (emphasis added).

The magistrate judge thus corrected the misinformation

petitioner says was previously given to her by her attorney.

- 13 -

Petitioner was clearly informed that the sentence for the two counts could be anything between 0 to 40 years imprisonment, not a mandatory minimum of 60 months.  Thus, the minimum sentence was less severe than petitioner had been led to believe.  The guilty plea colloquy also clearly informed petitioner that there was no agreement as to the actual sentence, and that any statement by her attorney attempting to predict the sentence was not binding on the Court.  Nothing in the subsequent Sentencing Memorandum suggests there was ever an agreement for a 60 month sentence, even though it erroneously made reference to a statutory mandatory minimum of 60 months on one page.  Not only was the Sentencing Memorandum written well after petitioner pled guilty, it also very clearly recognized the applicable sentencing range, stating "[t]he [Presentence] report lists her prior criminal history and determines a criminal history score of 1, a criminal history category of II, putting her in guideline range of 151-188 months." (Cr. Doc. #200, p. 2.)  At the sentencing hearing, counsel simply asked for a reduction to 60 months.

The Court finds that the erroneous statements by counsel to petitioner prior to her guilty pleas did not render the guilty pleas unknowing or involuntary.  Because petitioner was given the correct information during her guilty plea hearing before being called upon to plead, there was no prejudice as a result of her

attorney's misstatements.  Relief based on Ground One is denied.

### B. Ground Two: Waiver Provision in Plea Agreement

Petitioner argues that the ineffective assistance of counsel as to the possible penalty (discussed above) resulted in the waiver of appeal/collateral relief provision of her Plea Agreement being unknowing and involuntary, and that counsel failed to explain the provision to her.  The record does not support either argument.

The Court has already determined that there was no ineffective assistance of counsel resulting from the misstatement regarding a mandatory minimum sentence, so this does not provide a valid basis to challenge the waiver provision.  Assuming, for purposes of the §2255 motion, that counsel failed to explain the waiver of appeal provision to petitioner, the Court finds that the record establishes there was no ineffective assistance of counsel because no prejudice has been shown.  Additionally, the record establishes petitioner did understand the provision, and knowingly and voluntarily agreed to it.

A waiver provision in a plea agreement is valid if made knowingly and voluntarily.  United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001) (citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)).  To establish that the waiver was made knowingly and voluntarily, the government must show that either (1) the district court specifically questioned the

defendant about the waiver during the plea colloquy, or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver.  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008).

Petitioner's written Plea Agreement contains a waiver of appeal and collateral challenge provision, which states in pertinent part:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and **expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground** . . . except (a) the ground that the sentence exceeds the defendant's applicable guideline range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(Cr. Doc. #145, p. 13) (emphasis added).  As noted before, petitioner stated that she read, initialed, and signed the Plea Agreement after discussing it with her attorney.

During the plea colloquy, the magistrate judge specifically reviewed the waiver provision on page 13 of the Plea Agreement:

THE COURT: . . . And under some circumstances you or the Government may have the right to appeal a sentence that the court imposes. However, pursuant to a provision in your plea agreement on Page 13, you have agreed and expressly waived the right to appeal your sentence or to challenge it collaterally on any ground, including the ground that the court may have erred in determining the applicable guideline range pursuant to the sentencing guidelines, with three exceptions. You may appeal on the ground that the sentence exceeds the applicable guideline range as determined by the court; secondly, you may appeal on the ground that the sentence exceeds the statutory maximum penalty; or, thirdly, you may appeal on the ground that the sentence violates the Eighth Amendment to the constitution.

Provided, however, if the Government were to exercise its right to appeal the sentence that's imposed, you would be released from the waiver and you would be able to appeal the sentence as authorized by law.

Do you understand this waiver of your rights?

THE DEFENDANT: Yes, I do.

THE COURT: **Did you make this waiver knowingly and voluntarily?**

THE DEFENDANT: **I did.**

(Cr. Doc. #232, 12:6-13:3) (emphasis added).

The Court finds that the magistrate judge specifically discussed the waiver provision and explained the consequences of the waiver provision. The Court further finds that petitioner verbally acknowledged and agreed that she understood the waiver provision, and that the pleas were made knowingly and voluntarily.

Therefore, even if petitioner's attorney had not explained the provision, by the time petitioner entered her guilty pleas she had been fully advised about this provision, stated she understood it, and agreed the waiver was knowing and voluntary.  Thus, petitioner has failed to establish any prejudice from her attorney's failure to explain the provision.  There has been no constitutionally ineffective counsel and relief as to Ground Two is denied.

### C. Ground Three: Ineffective Assistance Re: Drug Quantity

As to Ground Three, petitioner asserts that her attorney provided ineffective assistance because he failed to argue that she had been incarcerated for 13 months of the 16 month conspiracy, and therefore the drug quantity for which she was accountable should be lower. The record reflects that petitioner's attorney did object to the amount of drugs attributed to petitioner, and that he obtained a successful result.

The Indictment (Cr. Doc. #1) reflects the charged conspiracy existed from in or about January, 2010 through in or about May, 2011.  The Presentence Report[4] reflects that Defendant David Massey was the organizer/leader of an organization which recruited individuals to act as patients who would obtain prescriptions for Oxycodone and then distribute the Oxycodone illegally.  (Cr. Doc.

---

4 The Presentence Report was filed under seal as an attachment to United States Probation's memorandum regarding petitioner's eligibility under the Amendment 782.  (Cr. Doc. #268.)

#268, p. 13, ¶ 20.)  During the time frame petitioner participated in the conspiracy, there were 6,391 15 mg Oxycodone pills and 25,450 30 mg Oxycodone pills obtained for distribution by members of the conspiracy.  (Id. at ¶ 21.)  Using these drug quantities, the Presentence Report computed petitioner's base offense level at level 34.  (Id., p. 16, ¶¶ 41, 42.)

Defense Counsel filed a written objection to the drug quantity, arguing that for most of the time the conspiracy was ongoing petitioner was in jail and not participating in the conspiracy.  (Cr. Doc. #200, pp. 1-2; Cr. Doc. #268, p. 30.)  The drug quantity for which petitioner was accountable was the first issue raised by defense counsel at the sentencing hearing.  (Cr. Doc. #230, 4:21-6:3.)  The Court and the parties discussed the dates petitioner was in jail, and what periods of time had been used for the pill counts.  (Id., pp. 8-10.)  Defense counsel and the government attorney were provided an opportunity outside the presence of the Court to review the discovery as to the appropriate amount of pills, and the Court took a 26 minute recess.  (Id., 10:19-11:11; 16:20-17:21.)  The government deducted a certain number of pills based upon the dates of petitioner's incarceration, and recalculated the drug quantities.  (Id., pp. 17-18.)  Petitioner personally agreed to the recalculated amount (id., p. 18), which resulted in a two-level reduction to level 32 (id., pp.

18-19).  Based on counsel's successful argument, the guideline range was lowered to a range of 121 months to 151 months, down from the original calculation of 151 months to 188 months of incarceration.  (Cr. Doc. #268, p. 26, ¶ 90.)

The record thus establishes, contrary to petitioner's argument, that counsel did raise the issue of the drug quantity, and that he did so effectively and to petitioner's benefit.  There is neither deficient performance nor prejudice established.

Along a similar line, petitioner argues that her attorney should have argued about the quantity of drugs she possessed in Count Two, which required a separately calculated Sentencing Guidelines range.  The law does not support petitioner's position, and there was no ineffective assistance of counsel for failing to make an argument that had no merit.

While on bond, petitioner possessed a quantity of Oxycodone on September 30, 2010, which formed the basis of Count Two of the Indictment.  Petitioner traveled with a confidential informant to Broward County, Florida, where she went into a doctor's office and a clinic and exited with prescriptions for Oxycodone and Alprazolam.  The prescriptions were filled at a pharmacy in Naples before returning to Lee County, Florida.  Police officers conducted a traffic stop of petitioner's vehicle, and she was taken into custody.  Petitioner's vehicle contained 30 2mg pill of

Alprazolam (Xanax) and 30 pills of Lisinop, HCTZ.  Petitioner's purse contained 143 30 mg Oxycodone pills, and a search of petitioner's person uncovered 180 30 mg Oxycodone pills; 60 15mg Oxycodone pills; and 60 2mg pills of Alprazolam.  (Cr. Doc. #268, pp. 14-15, ¶¶ 27-31.)

Petitioner is correct that this quantity of Oxycodone would not alone rise to a Level 32, but is incorrect in arguing that she was only accountable for these drugs in computing the Count Two sentence.

> When a defendant has more than one count of conviction, U.S.S.G. § 3D1.1 of the Sentencing Guidelines instructs the district court to group the counts "into distinct Groups of Closely Related Counts" by applying the rules in § 3D1.2. After that is done, the district court determines the offense level for each Group by applying the rules in U.S.S.G. § 3D1.3. The district court then determines the "combined offense level" applicable to all "Groups taken together" by applying the rules in U.S.S.G. § 3D1.4. See U.S.S.G. § 3D1.1(a).

United States v. Jimenez-Cardenas, 684 F.3d 1237, 1239 (11th Cir. 2012).  After completing this process, the Court "shall impose that total punishment on each such count, except to the extent otherwise required by law."  U.S. Sentencing Guidelines Manual § 5G1.2(b).  This is what occurred with regard to Count II.  Thus, there was no legal basis for defense counsel to object to the drug amount used to calculate the Sentencing Guidelines range for Count Two.  Failure to make such an objection was neither deficient

performance nor prejudicial.  Petitioner is denied relief as to Ground Three.

### D. Ground Four: Ineffective Assistance Regarding Role Mitigation

Petitioner asserts that counsel should have argued for a downward departure based on her very minor role in the conspiracy, during which she was mostly incarcerated, and because she clearly was coerced by her boyfriend and leader in the conspiracy to take responsibility.  The Court finds this argument unpersuasive because the facts clearly demonstrate petitioner was not entitled to a role reduction.

At sentencing, the Court asked about petitioner's role in the conspiracy relative to her co-defendants.  The government argued that she was "the right-hand woman of David Massey", trusted and at least equal to Devon Gallagher, his brother.  (Cr. Doc. #230, 27:14-25.)  The admitted facts in the Plea Agreement and the Presentence Report reflect petitioner's substantial role in the conspiracy and distribution of Oxycodone, even discounting the time petitioner was in jail.  Petitioner admitted to the facts that establish that she "sponsored" people by paying for their doctor visits and their prescriptions, and paid them a fee to keep filling the prescriptions.  Petitioner was under surveillance as she made stops and filed prescriptions for Oxycodone.  The fact that petitioner was in jail for most of the conspiracy did not

diminish her agreement with the co-defendants, her knowledge of the objective and activities of the conspiracy, or her role when she was not in jail. It is objectively reasonable for trial counsel to have argued mitigating factors that had a better likelihood of success, such as petitioner's upbringing and her absence during a majority of the charged conspiracy, rather than attempting to downplay petitioner's factual role in the conspiracy. [5] Additionally, the Court finds no prejudice since such an argument for a role reduction would have been denied by the undersigned based upon the undisputed facts of the case.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #247) is **DENIED** as to all grounds on the merits.

2. The Clerk of the Court shall enter judgment accordingly and close the civil file. The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

---

5 Counsel also argued, as set forth in the Sentencing Memorandum, that petitioner was molested as a toddler, and later as a young girl, and gave birth at the age of 13. Counsel argued that petitioner was "infatuated" with David Massey, a young woman with a drug addiction, and that she should be given a sentence reduction to "possibly 60 months." (Cr. Doc. #230, 20:19-23; 22:4-9, 10-12.)

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations omitted).   Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this   __24th__   day of February, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Petitioner, AUSA

– 24 –